UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| J&J SPORTS PRODUCTIONS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LEE DUONG, et al., ) <br> ) <br> Defendants. ) <br> ) | Case No.: 13-CV-02002-LHK <br><br> ORDER GRANTING MOTION FOR DEFAULT JUDGMENT |

On August 13, 2013, the Clerk of the Court entered default against defendant Lee Duong, individually and doing business as Nha Em ("Defendant"),[1] after Defendant failed to appear or otherwise respond to the Summons and Complaint in this case within the time prescribed by the Federal Rules of Civil Procedure. *See* ECF No. 14. Before this Court is the Motion for Default Judgment filed by J&J Sports Productions, Inc. ("Plaintiff"). *See* Mot. Default J. ("Mot."), ECF No. 17. Defendant, not having appeared in this action to this date, has not opposed the motion. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for determination without oral argument. Accordingly, the hearing and the case management conference set for January 16, 2014, are VACATED. For the reasons discussed below, Plaintiff's Motion for Default Judgment is GRANTED.

---

[1] Plaintiff also named Satom, LLC, an unknown business entity doing business as Nha Em, as a defendant in the Complaint. ECF No. 1. However, Plaintiff and Satom, LLC, reached a settlement and Satom, LLC, was subsequently dismissed from the case. *See* ECF Nos. 9 and 15.

1
Case No.: 13-CV-02002-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

## I. BACKGROUND

Plaintiff J&J Sports Productions, Inc. ("Plaintiff") is a sports and entertainment programming distributor. Plaintiff alleges it secured the domestic commercial distribution rights to broadcast the "Floyd Mayweather, Jr. v. Miguel Cotto, WBA Super World Light Middleweight Championship Fight Program" (the "Program"), which telecast nationwide on May 5, 2012. *See* Compl. ¶ 16, ECF No. 1. Plaintiff then entered into sub-licensing agreements with various commercial entities throughout the United States, wherein it granted limited public exhibition rights to these entities in exchange for licensing fees. *See* Compl. ¶ 17. On May 5, 2012, investigator Gary Gravelyn observed the Program being displayed at Defendant's commercial establishment, Nha Em, located in San Jose, California. *See* Compl. ¶¶ 7-14; Mot. at 2. Plaintiff alleges that Defendant intercepted the Program unlawfully, and intentionally exhibited it for the purpose of direct or indirect commercial advantage. *See* Compl. ¶¶ 19-20.

On May 1, 2013, Plaintiff filed this action against Defendant for: (1) violation of the Federal Communications Act of 1934, as amended, 47 U.S.C. §§ 605, *et seq.*; (2) violation of the Cable Television Consumer Protection and Competition Act of 1992, as amended, 47 U.S.C. §§ 553, *et seq.*; (3) conversion; and (4) violation of California Business and Professions Code §§ 17200, *et seq*. *See* ECF No. 1. On June 7, 2013, Plaintiff served Defendant with a copy of the Summons, Complaint, and related documents. *See* ECF No. 5. Pursuant to Federal Rule of Civil Procedure 12(a)(1)(A)(i), Defendant was thereby required to file and serve his response to Plaintiff no later than June 28, 2013. However, Defendant failed to appear and also failed to file any responsive pleading. *See* Decl. Thomas P. Riley Supp. Pl.'s Appl. Default J. ("Riley Decl.") ¶ 2, ECF No. 17-2.

On August 13, 2013, the Clerk of the Court granted Plaintiff's request and entered default against Defendant. *See* ECF No. 14. Plaintiff now moves for entry of default judgment pursuant to Rule 55(b) of the Federal Rules of Civil Procedure. *See* ECF No. 17.

## II. DISCUSSION

### A. Default Judgment

The Court finds that default judgment is appropriate in the instant case. If a defendant fails

to answer a complaint in a timely manner, a plaintiff may move the court for an entry of default judgment. Fed. R. Civ. P. 55(b)(2). The district court's decision whether to enter a default judgment is discretionary. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (per curiam). When deciding whether a default judgment is warranted, a court may consider the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect[,] and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Generally, default judgments are disfavored because "[c]ases should be decided upon their merits whenever reasonably possible." *Id.* at 1472.

Here, many of the *Eitel* factors favor entry of default judgment. First, Plaintiff will likely be prejudiced if default judgment is not entered. Because Defendant has refused to take part in the litigation, Plaintiff will be denied the right to adjudicate the claims and obtain relief if default judgment is not granted. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Additionally, there is no indication that Defendant's default is due to excusable neglect or that material facts are disputed since Defendant has not presented a defense or otherwise communicated with the Court. Moreover, though public policy favors decisions on the merits, litigation of the merits is simply not possible in light of Defendant's refusal to litigate.

In contrast, Plaintiff's request for maximum statutory damages weighs against granting an entry of default judgment, particularly because the amount requested appears disproportionate to the harm alleged. *See Eitel*, 782 F.2d at 1472. However, given that the Court may address the reasonableness of Plaintiff's request when deciding the question of damages, the Court need not deny default judgment on this factor alone. *See, e.g.*, *Joe Hand Promotions, Inc. v. Mujadidi*, No. 11-5570, 2012 WL 3537036, at *3 (N.D. Cal. Aug. 14, 2012) (noting that a request for maximum possible statutory damages "is not enough on its own to bar a default judgment . . . as it may be addressed by the Court in deciding what damages should be awarded, assuming that a default judgment is otherwise appropriate.").

The second and third *Eitel* factors, involving the merits of Plaintiff's substantive claim and the sufficiency of the Complaint, warrant a closer analysis by the Court. Although Plaintiff's complaint alleges violations of (1) 47 U.S.C. § 605, (2) 47 U.S.C. § 553, (3) California's law against conversion, and (4) California Business and Professions Code §17200, Plaintiff's Motion for Default Judgment only seeks damages under 47 U.S.C. § 605 and for conversion. *Compare* Compl. at 4-9 *with* Riley Decl. ¶ 7.

Section 605 of the Federal Communications Act of 1934 "prohibits the unauthorized receipt and use of radio communications for one's 'own benefit or for the benefit of another not entitled thereto.'" *DirecTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008) (citing 47 U.S.C. § 605(a)). "[T]he 'communications' protected by § 605(a) include satellite television signals." *Id*. Section 553 of the Cable Television Consumer Protection and Competition Act of 1992, however, prohibits the unauthorized reception or interception of "any communications service offered over a *cable* system, unless specifically authorized to do so . . . ." 47 U.S.C. § 553(a)(1) (emphasis added). It follows that, generally, "a plaintiff may not recover under both § 605 and § 553 as it is highly unlikely that a pirate used a satellite dish and a cable box to broadcast a single program simultaneously." *Mujadidi*, No. 11-5570, 2012 WL 3537036, at *3 (internal citation omitted).

Plaintiff states that Defendant violated Section 605 because, "[w]ith full knowledge that the Program was not to be intercepted . . . displayed, and/or exhibited by commercial entities unauthorized to do so, . . . Defendant[] . . . did unlawfully intercept . . . display, and/or exhibit the Program at the time of its transmission at [his] commercial establishment . . . ." Compl. ¶ 19. The declaration of Plaintiff's investigator, Gary Gavelyn, states that the establishment "does not have a satellite dish," and that a "cable box was not visible." *See* Decl. of Affiant, ECF No. 17-3. However, Plaintiff fails to state the actual means of signal transmission used, which is necessary to determine whether Plaintiff has sufficiently stated a claim pursuant to either Section 605 or Section 553. *See* Mot. at 8 (stating "Plaintiff cannot determine the precise means that the Defendant used to receive the Program unlawfully").

When the means of signal transmission used is uncertain, courts have been split on whether

to apply Section 553 or Section 605 in the context of a motion for default judgment.[2]  The Court need not resolve this issue here as Plaintiff's allegations suffice to demonstrate that Defendant violated either Section 553 or Section 605, and both statutes provide a discretionary range of possible damage awards that partially overlap.  As discussed in Part II.B, the Court awards Plaintiff damages that fall within both statutory ranges.  Therefore, for the purposes of this particular case, any uncertainty as to whether Defendant violated Section 553 or 605 is immaterial; the statutory award in the same amount is equally appropriate in either case.  *See G&G Closed Circuit Events, LLC v. Castro*, No. 12-01036, 2012 WL 3276989, at *3 (N.D. Cal. Aug. 9, 2012) (finding, in the context of a similar case, that "[a]ny uncertainty as to whether [Defendant] in fact violated Section 605 is immaterial in light of the fact that a statutory award in the same amount is equally appropriate in the event [Defendant] actually violated Section 553.").

Finally, the Court finds that default judgment on Plaintiff's conversion claim is also appropriate in the instant case.  The elements of conversion are: (1) ownership of a right to possession of property; (2) wrongful disposition of the property right of another; and (3) damages.  *See Tyrone Pacific Int'l, Inc. v. MV Eurychili*, 658 F.2d 664, 666 (9th Cir. 1981) (citing *Hartford Financial Corp. v. Burns*, 96 Cal. App. 3d 591, 598 (1979)).  Plaintiff properly alleges ownership of the distribution rights to the Program, misappropriation of those rights by Defendant's unlawful interception, and damages.  *See* Compl. ¶¶ 30-33.  Therefore, Plaintiff's allegations regarding liability, which are taken as true in light of the Clerk's entry of default, are sufficient to entitle Plaintiff to damages.

Accordingly, the Court GRANTS Plaintiff's Motion for Default Judgment.

---

[2] *Compare, e.g.*, *J&J Sports Prods., Inc. v Ro*, No. 09-02860, 2010 WL 668065, at *3 (analyzing the defendant's violation under Section 553, despite an investigator "[not having seen] a cable box and [having seen] a satellite dish" at the establishment, because "without better homework by the investigator, the Court will not rule out the presence of a cable box"), *and J&J Sports Prods., Inc. v Ayala*, No. 11-05437, 2012 WL 4097754, at *2 (N.D. Cal. Sept. 17, 2012) (finding that "[b]ecause sufficient facts have not been alleged" and "Plaintiff [has not] presented any affidavit evidence of a satellite, . . . 47 U.S.C. § 605 does not apply" and instead "[construing] this motion as solely seeking damages under § 553"), *with G&G Closed Circuit Events, LLC v. Castro*, No. 12-01036, 2012 WL 3276989, at *2 (N.D. Cal. Aug. 9, 2012) (finding that when "there is an insufficient basis to conclude with certainty which of the two statutes would support an award of statutory damages," it is "unsatisfactory" to presume a violation of § 553 as opposed to § 605 where Plaintiff has not sought damages under § 553).

**B.     Requests for Relief**

Plaintiff requests $10,000 in statutory damages for violation of 47 U.S.C. § 605(e)(3)(C)(i)(II), and $100,000 in enhanced damages for willful violation of 47 U.S.C. § 605(e)(3)(C)(ii). Mot. at 11, 14. Plaintiff also seeks $2,200 in conversion damages, the amount Defendant allegedly would have been required to pay had Defendant licensed the Program from Plaintiff. *See* Mot. at 20.

While a court must assume that all well-pleaded allegations regarding liability are true once the Clerk of Court enters default, this same presumption does not apply to a plaintiff's request for damages. *See Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977); *see also Pope v. United States*, 323 U.S. 1, 12 (1944) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly.").

**1.     Statutory Damages**

Plaintiff requests maximum statutory damages available under Section 605, noting that the court has discretion to award significant damages "[e]ven in . . . cases of commercial signal piracy where there has been no egregious circumstance noted[.]" Mot. at 11. Section 605(e)(3)(C)(i)(II) provides that an aggrieved party may recover a sum of not less than $1,000 and not more than $10,000 for each violation of § 605(a), as the Court considers just. Section 553(c)(3)(A)(ii) also provides that an aggrieved party may recover a sum up to $10,000 for each violation, but affords courts discretion to award as little as $250. "A traditional method of determining statutory damages is to estimate either the loss incurred by the plaintiff or the profits made by the Defendant." *Joe Hand Promotions v. Kim Thuy Ho*, No. 09-01435, 2009 WL 3047231, at *1 (N.D. Cal. Sept. 18, 2009) (internal quotation marks and citation omitted).

Plaintiff submits evidence that a commercial license for the broadcast of the Program would have cost Defendant approximately $2,200, based on the estimated 50-person capacity of Defendant's commercial establishment. *See* Pl.'s Aff. Supp. Appl. Default J. ("Gagliardi Decl.") ¶ 8, ECF No. 19; *see id*., Ex. 1 (advertising that to order the *Floyd Mayweather, Jr. v. Miguel Cotto*

fight on May 5, 2012, the rate was $2,200 for seating up to 100 people and $4,200 for seating between 100 and 200 people). Alternatively, as evidence of Defendant's potential profits, Plaintiff submits evidence that three separate head counts, at various times, revealed that the total number of patrons were 9, 9, and 9, and that there was no cover charge. *See* Decl. of Affiant at 1-3. As there is no evidence of how much Defendant made during the unlawful exhibition of the Program, the Court shall base statutory damages on the cost of the commercial license.

Accordingly, the Court finds that Plaintiff is entitled to $2,200 in statutory damages.

### 2. Enhanced Damages

Plaintiff also requests enhanced damages pursuant to Section 605(e)(3)(C)(ii). Mot. at 14. This section authorizes the Court to award up to $100,000, in its discretion, upon finding that the violation "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." In contrast, 47 U.S.C. § 553(c)(3)(B) authorizes the Court discretion to award up to $50,000.

Here, Plaintiff has not submitted any evidence of significant "commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). Plaintiff has presented evidence that Defendant had one television in their commercial establishment that displayed the Program. *See* Decl. of Affiant at 2. Plaintiff asserts that there were approximately 9 patrons present during its investigation of Nha Em. *Id*. at 2-3. However, there is no evidence that Defendant advertised the fight, assessed a cover charge, had a minimum purchase requirement, or had a special premium on food and drink on the night of the fight. *See Kingvision Pay-Per-View, Ltd. v. Backman*, 102 F. Supp. 2d 1196, 1198 n.2 (N.D. Cal. 2000) (stating that "[a]n establishment that does not promote itself by advertising the Program, does not assess a cover charge, and does not charge a special premium for food and drinks hardly seems like the willful perpetrators envisioned by the statute's framers."); *but cf. J&J Sports Prods., Inc. v. Mosley*, No. 10-5126, 2011 U.S. Dist. LEXIS 56220, at *12-15 (N.D. Cal. Apr. 13, 2011) (awarding $2,500 in enhanced damages under Section 553, where 17 patrons were present, there was no cover charge).

Furthermore, Plaintiff has not submitted evidence that Defendant is a repeat offender, which is another factor that would indicate that Defendant's actions were willful, and thus justify

an award of enhanced damages.  *See, e.g., Kingvision Pay-Per-View, Ltd.*, 102 F. Supp. 2d at 1198-1199 (noting that "a higher statutory award may be justified in cases where Defendants are repeat offenders who have pirated similar Programs on previous occasions, and who need an especially severe financial deterrent.").  Defendant's lack of repeated violations leans against a finding of willfulness that would warrant a greater enhanced damages award.

In light of these facts, the Court does not agree with Plaintiff that the maximum enhanced damages award is warranted.  Although Plaintiff cites to several out-of-district cases to support its request for maximum enhanced damages possible, *see* Mot. at 14-19, Plaintiff has not cited any binding precedent or identified any specific circumstances that justify such a high award.

Therefore, the Court GRANTS Plaintiff's request for enhanced damages, but concludes that an award of $500 is more than adequate and just to compensate Plaintiff for any lost profits from having Defendant show the Program on one television to 9 patrons and to deter Defendant's future infringement.

### 3. Damages for Conversion

Plaintiff also seeks $2,200 in damages for conversion under California Civil Code § 3336.  Mot. at 20.  Damages for conversion are based on the value of the property at the time of conversion.  *See Tyrone Pac. Intern., Inc.*, 658 F.2d at 666.  As noted in Part II.B.1., the commercial license allegedly would have cost Defendant $2,200.  *See* Gagliardi Decl. ¶ 8, ECF No. 19.  Thus, Plaintiff's request is appropriate.

Accordingly, the Court finds that Plaintiff is entitled to $2,200 in damages for conversion.

## III. CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Default Judgment is GRANTED.  Judgment shall be entered in favor of Plaintiff J&J Sports Productions, Inc., and against Defendant Lee Duong, individually and doing business as Nha Em.  Plaintiff shall recover $4,900 in total damages.[3]  The Clerk shall close the file.

---

[3] Although Plaintiff's Complaint requests attorney's fees and costs pursuant to 47 U.S.C. § 553(c)(2)(C) and  47 U.S.C. § 605(e)(3)(B)(iii), Compl. at 5-6, Plaintiff's Motion for Default Judgment does not specifically request these fees and costs, nor does it provide any evidence to support providing such an award.  Thus, the Court declines to award attorney's fees and costs at this time.  If Plaintiff's counsel wishes to recover attorney's fees and costs, he must file an affidavit

**IT IS SO ORDERED.**

Dated: January 8, 2014

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

---

and supporting documentation within 30 days of the date of this Order, including a curriculum vitae or resume as well as billing and cost records to justify such an award.